# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| KEITH EUGENE WASHINGTON, | Case No. 18-CV-1464 (DWF/TNL) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| STEPHEN JOSEPH CRAANE, Physician (MD); DEBORAH ANN MACNEILL, Psychiatrist; LON JOSEPH AUGDAHL, Psychiatrist; DIANE MEDCHILL, Behavioral Health Assistant Director; KATHY REID, Health Service Administrator; DAVID REISHUS, Assistant Warden of Operations; NAN LARSON, Director of Health Service; and JANE DOES, Nurses, | |
| Defendants. | |

Keith Eugene Washington, plaintiff pro se.

Rachel E. Bell-Munger, Minnesota Attorney General's Office, for defendants Diane Medchill, Kathy Reid, David Reishus, and Nan Larson.

\*\*\*

Plaintiff Keith Eugene Washington, a Minnesota state prisoner, brings this action pursuant to 42 U.S.C. § 1983 alleging deliberate indifference to his medical needs by prison officials and contractors. Four of the seven defendants named to this action — Diane Medchill, Kathy Reid, David Reishus, and Nan Larson — now seek dismissal from this litigation pursuant to Rule 12 of the Federal Rules of Civil Procedure. *See* ECF No. 20. The four moving defendants argue that, insofar as they are sued in their official

1

capacities as agents of the State of Minnesota, they are immune from claims for money damages; that Washington has failed to allege that they personally acted with deliberate indifference to his medical needs; and that the actions that Washington *has* alleged them to have engaged in are not unlawful. For the reasons provided below, this Court agrees with the moving defendants and recommends that they be dismissed without prejudice from this action.

## I. BACKGROUND

Prior to his incarceration, Washington had been prescribed psychotropic medications that he alleges had worked effectively with minimum side effects.[1] Defendant Deborah Ann MacNeill, a psychiatrist at the prison where Washington resides, refused to allow Washington to continue with this medication. *See* Compl. at 6 [ECF No. 1]. Instead, MacNeill insisted that Washington switch to other medication — medication that was not as effective and caused Washington to suffer "life altering side effects." *Id*. at 7. Washington offers several motives for why MacNeill might have changed his medications — either a desire to use him "as a lab rat," *id*., or in retaliation for filing complaints with the Minnesota Board of Medical Practice, or perhaps simply due to insufficient interest in the specifics of Washington's case — but in any event, MacNeill persisted in this course of treatment for several months. Defendant Lon Joseph

---

[1] For purposes of this Recommendation, this Court accepts as true all of the factual allegations in the complaint and draws all reasonable inferences in Washington's favor. *See Aten v. Scottsdale Ins. Co.*, 511 F.3d 818, 820 (8th Cir. 2008).

Augdahl, another psychiatrist and MacNeill's supervisor, supported this course of treatment. *Id.* Neither MacNeill nor Augdahl have joined in the motion to dismiss.

Around this same time, Washington was engaged in another dispute over medication with defendant Stephen Joseph Craane, a physician employed at the prison. *See* Compl. at 10. This argument centered on medication that had previously been prescribed to Washington for nerve damage caused by a gunshot wound. *Id.* As in the other dispute, Craane prescribed different medication that Washington alleges was less effective and caused more severe side effects. *Id.* Craane also has not joined in the motion to dismiss.

In addition to MacNeill, Augdahl, and Craane, four prison officials have been named as defendants to this action in connection with the above-described events. Washington alleges that, as the facility's health service administrator, defendant Kathy Reid failed to take adequate steps to intervene or reprimand the other defendants for their actions and also "hinder[ed] petitioner's exhaustive process." Compl. at 8. Defendant David Reishus, associate warden, is similarly alleged to have "allowed the malpractice and retaliatory actions with foreknowledge, and did nothing to stop the defendants under his charge." *Id.* (spelling and punctuation altered). No specific allegations are raised in the complaint regarding defendants Diane Medchill or Nan Larson; Washington clarifies in his briefing that they have also been included in this litigation because, he argues, those defendants (in their supervisory capacities at the prison) should have done more to ensure that he received adequate medical care. Washington also asserts in his briefing that Medchill and Larson hindered his ability to pursue administrative grievances.

3

## II. ANALYSIS

Washington sues each of the defendants in both their personal capacities and in their official capacities as officers or employees of the State of Minnesota. Defendants Medchill, Reid, Reishus, and Larson move to dismiss the claims brought against them in both capacities. This Court agrees that both sets of claims fail as a matter of law and should therefore be dismissed. Because the reasons for why those claims fail differs somewhat for each capacity, this Court will first discuss the personal-capacity claims and then turn to the official-capacity claims.

### A. Personal Capacity

"Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Accordingly, to succeed on a personal-capacity claim under § 1983, a litigant must prove that the specific defendant being sued acted unlawfully himself or herself. *See Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) ("Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights.").

Washington raises three theories as to why Medchill, Reid, Reishus, and Larson should be held personally liable for the events at issue.[2] First, Washington alleges that

---

[2] The pleading itself includes no factual allegations whatsoever regarding Medchill and Larson. Obviously, this is insufficient to make out a viable claim for relief against those defendants. Washington clarifies in his briefing on defendants' motion to dismiss, however, that Medchill and Larson have been included in this action for largely the same reasons that Reid and Reishus were included — because (he alleges) those defendants

each of the four moving defendants exercised supervisory authority over Craane, MacNeill, Augdahl, or over another of the moving defendants, thus making the supervisory defendant responsible for the actions of his or her supervisees.  Second, Washington alleges that the four moving defendants enacted or carried out unlawful policies which led to the unlawful denial of medical care.  Third, Washington alleges that the four moving defendants either actively thwarted or, at a minimum, turned a blind eye to his administrative grievances concerning his medical care.

With respect to defendants' alleged supervisory authority:  "*Respondeat superior* or vicarious liability will not attach under § 1983."  *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).  The mere fact, taken alone, that defendants acted as supervisors to others alleged to have committed unlawful acts cannot be enough to establish the liability of the supervisors under § 1983.  *See also Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010) ("As the plaintiffs concede, prison supervisors . . . cannot be held liable under § 1983 on a theory of respondeat superior.").

That said, "[w]hile the doctrine of respondeat superior does not apply to § 1983 cases, a supervisor may still be liable under § 1983 if either his direct action or his 'failure to properly supervise and train the offending employee' caused the constitutional violation at issue."  *Jackson v. Nixon*, 747 F.3d 537, 543 (8th Cir. 2014) (quoting *Tlamka v. Serrell*, 244 F.3d 628, 635 (8th Cir. 2001)).  "Direct action" in this context can include implementation of an official policy or tacit custom that resulted in the

---

(1) exercised supervisory authority, (2) implemented unlawful policies, and (3) were responsible for denying his grievances about the quality of his medical care.

deprivation of the plaintiff's constitutional rights.  *See, e.g.*, *A.H. v. St. Louis County, Missouri*, 891 F.3d 721, 727-28 (8th Cir. 2018).  In other words, a plaintiff cannot bring claims against a supervisor under § 1983 simply because that person was the supervisor of someone who acted unlawfully, but rather must allege that something the supervisor did or failed to do — for example, the establishment of an unlawful policy, or the supervisor's deliberate indifference to training or overseeing employees properly — resulted in the deprivation of the litigant's constitutional rights.

Much of Washington's complaint and briefing seem to take for granted the misconception that the moving defendants' supervisory authority, in and of itself, is sufficient to establish liability under § 1983.  That said, the pleading does occasionally gesture towards allegations that the moving defendants themselves acted unlawfully.  For example, Washington alleges that Reid "refused to reprimand health service staff," Compl. at 8 (spelling corrected) — a suggestion that Reid carried out her supervisory role with the kind of deliberate indifference that can give rise to liability under § 1983.  Similarly, Washington alleges that Reishus "allowed the malpractice and retaliatory actions with foreknowledge, and did nothing to stop the defendants under his charge." *Id*. (spelling and punctuation altered).

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Nevertheless, the allegations in the complaint must be sufficient to "raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In assessing the sufficiency of the complaint, the court may disregard legal conclusions that

are couched as factual allegations.  *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Complaints filed by an unrepresented litigant such as Washington are to be construed

liberally, but the pleading still must allege sufficient facts to support the claims advanced.

*Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).

Washington's allegations concerning defendants' alleged indifference to their

supervisory responsibilities are overwhelmingly vague.  At a first approximation,

Washington seems to believe that because the moving defendants were supervisors, they

could have overridden the decisions of the three doctors to prescribe different medication

and that their failure to do so thus implicates them in the (alleged) deliberate indifference

of the doctors.  But, as a practical matter, this is little different than claiming that the

moving defendants should be held liable because they were in positions of supervisory

authority over others who acted wrongfully — exactly the kind of claim precluded under

§ 1983.  *See Harris*, 489 U.S. at 385.  Washington's allegations of unlawful policies or

customs that result in the deliberate indifference to the medical care of prisoners are still

more vague; never are these alleged policies or customs described in any detail, and thus

the defendants cannot be expected to know what policy or custom they are being alleged

to have enforced.  Further, to the extent that Washington is claiming that defendants have

a general policy of denying medical care to prisoners, or a more specific policy of

denying the medication that Washington sought, such a claim is substantially undercut by

his own allegation that "many" prisoners at the facility where he is incarcerated receive

the medication that he requested from MacNeill and Augdahl.  *See* ECF No. 28 at 6.

Washington also claims, with somewhat more specificity, that the moving defendants did not (in his view) adequately respond to his grievances while promoting a culture in which grievances from prisoners went insufficiently addressed.  Washington presents this aspect of his claim less as a matter of deliberate indifference than a matter of denial of access to the courts; prisoners are required to exhaust "such administrative remedies as are available" before bringing federal litigation, *see* 42 U.S.C. § 1997e(a), and by thwarting his attempts at exhausting administrative remedies, Washington claims the moving defendants constructively impeded his ability to seek judicial relief.

But inexpedient action or other malfeasance during the grievance process *cannot* result in denial of access to the courts.  Section 1997e(a) requires only that prisoners exhaust *available* administrative remedies; administrative remedies are not available "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."[3]  *Ross v. Blake*, 136 S. Ct. 1850, 1860 (2016).  Further, "[a] prison grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates.  Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment."  *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (per curiam) (quotation omitted).  Thus, the denial of grievances cannot amount to a due-process violation, either.  *See Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (per curiam).

---

[3] Defendants have not moved to dismiss the complaint on the grounds that Washington failed to exhaust administrative remedies.

Washington has not adequately pleaded factual allegations that, if proved true, would demonstrate the moving defendants violated the law. Accordingly, it is recommended that the personal-capacity claims against those defendants be dismissed.

### B. Official Capacity

Unlike personal-capacity claims, which are brought against the state actor himself or herself, official-capacity claims "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 690 n.55 (1978); *accord Graham*, 473 U.S. at 165-66. Put another way, "the real party in interest in an official-capacity suit is the governmental entity and not the named official." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Insofar as Washington brings claims against Medchill, Reid, Reishus, and Larson in their official capacities as agents of the State of Minnesota, the state itself is the true party at interest.

This creates a problem for Washington. "[A]bsent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court." *Graham*, 473 U.S. at 169. "This bar remains in effect when State officials are sued for damages in their official capacity." *Id*. Section 1983 did not abrogate the states' immunity from claims for monetary damages under that provision, *see Quern v. Jordan*, 440 U.S. 332, 338-40 (1979), and the State of Minnesota has not waived its immunity, either generally or with respect to this particular lawsuit. Any attempt to recover monetary damages from the State of Minnesota, then, either through a claim directly against that entity or through claims against agents of the state sued in

those agents' official capacities, is a non-starter.  *See, e.g.*, *Murphy v. State of Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997).

Claims for prospective injunctive relief, by contrast, may be brought against a state official sued in his or her official capacity.  *See Ex parte Young*, 209 U.S. 123 (1908); *Andrus ex rel. Andrus v. Arkansas*, 197 F.3d 953, 955 (8th Cir. 1999). Washington requests prospective injunctive relief in his pleading — specifically, that the defendants provide the medications that he has requested and stop all retaliatory action in the future.  *See* Compl. at 10.  This aspect of Washington's official-capacity claims is not barred by the Eleventh Amendment.

Still, though, "[t]o establish liability in an official-capacity suit under section 1983, a plaintiff must show either that the official named in the suit took an action pursuant to an unconstitutional governmental policy or custom, or that he or she possessed final authority over the subject matter at issue and used that authority in an unconstitutional manner."  *Nix v. Norman*, 879 F.2d 429, 433 (8th Cir. 1989) (citations omitted).  As explained above with respect to the personal-capacity claims against Medchill, Reid, Reishus, and Larson, Washington has adequately pleaded neither that those defendants enacted or enforced an unconstitutional policy nor that those defendants effected their supervisory authority in an unconstitutional manner.  Similarly, there is no reason to believe from the complaint that the moving defendants are responsible for the *continuing* enforcement of unlawful policies or exercise of supervisory authority.

Washington therefore has not pleaded viable official-capacity claim against the moving defendants.[4]

### C. Conclusion

For the reasons just explained, this Court recommends that Medchill, Reid, Reishus, and Larson be dismissed from this action. The claims for monetary relief brought against the defendants in their official capacities fail due to the State of Minnesota's sovereign immunity; because sovereign immunity is jurisdictional in nature, this aspect of the dismissal must be effected without prejudice. *See, e.g.*, *Roth v. United States*, 476 Fed. App'x 95, 95 (8th Cir. 2012) (per curiam). The other aspects of the claims against the moving defendants have been insufficiently pleaded, *see* Fed. R. Civ. P. 12(b)(6), and should therefore be dismissed with prejudice if repleading of the claims would be futile, and dismissed without prejudice where the claims might conceivably be repleaded with success. *See Pet Quarters, Inc. v. Depository Trust and Clearing Corp.*, 559 F.3d 772, 782 (8th Cir. 2009). It is not impossible that Washington could uncover evidence during the course of this litigation demonstrating the personal malfeasance of the moving defendants, and thus it will be recommended that the claims against Medchill, Reid, Reishus, and Larson be dismissed without prejudice. Washington is warned, however, that he will not be permitted to amend his complaint to reintroduce

---

[4] The lack of a viable official-capacity claim against the moving defendants is unlikely to make much difference to this litigation. If Washington is correct that the continuing refusal to prescribe particular medication by Craane, MacNeill, and Augdahl amounts to deliberate indifference to his medical needs, then he will be entitled to prospective injunctive relief from those defendants, whether in their personal or official capacities, and additional injunctive relief from the moving defendants would be unnecessary.

11

claims against the moving defendants absent a more substantial showing that those

defendants might plausibly be found responsible for unlawful behavior.

## III. RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, IT

IS HEREBY RECOMMENDED THAT:

1.    The motion to dismiss of defendants Diane Medchill, Kathy Reid, David

Reishus, and Nan Larson [ECF No. 20] be GRANTED.

2.    Defendants Medchill, Reid, Reishus, and Larson be DISMISSED

WITHOUT PREJUDICE from this action.

Dated: April 18, 2019                    *s/Tony N. Leung*_____
                                         Tony N. Leung
                                         United States Magistrate Judge

## NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  *See* Local Rule 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).